UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TORAN PETERSON,

    Plaintiff,

v

GREGORY PIGG, *et al*.

    Defendants.

_____/

Civil Action No.: 20-12635
Honorable Nancy G. Edmunds
Magistrate Judge Elizabeth A. Stafford

**REPORT AND RECOMMENDATION TO GRANT DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT [ECF NO. 19]**

**I.    INTRODUCTION**

Plaintiff Toran Peterson sues prison officials Gregory Pigg and Stacey Ream, alleging they violated his First and Eighth Amendment rights. ECF No. 1.  The Honorable Nancy G. Edmunds referred the case to the undersigned for all pretrial matters under 28 U.S.C. § 636(b)(1).  ECF No. 10.

Defendants move for summary judgment under Federal Rule of Civil Procedure 56(a).  ECF No. 19.  Because Peterson has failed to exhaust his administrative remedies, the Court **RECOMMENDS** that the defendants' motion for summary judgment be **GRANTED**, and that his claims against defendants be **DISMISSED WITHOUT PREJUDICE**.

## II.     FACTUAL BACKGROUND

Peterson is a state prisoner at Michigan Department of Correction's Gus Harrison Correctional Facility (ARF).  In his verified complaint, Peterson says that he found some of his packed personal property, including books and his father's obituary, to be missing after he transferred to ARF in late December 2019.  ECF No. 1, PgID.2.  The next month, Peterson asked Pigg (an ARF corrections officer) about his confiscated property.  *Id.*, ¶13.  Pigg asked Peterson to identify himself and then told Ream (an ARF grievance coordinator) that "this is the guy who I was telling you about with all the legal papers who sued our buddy."  *Id.*  Pigg then told Peterson that he was lucky that all his property was not thrown out and that "he doesn't like prisoners who think there (sic) lawyers suing people."  *Id.*

Peterson complained to Pigg that the discarded obituary was his father's and Pigg retorted that it could be Peterson's obituary.  *Id.*  Peterson says that he teared up and told Ream that she was a witness and that he would "be writing that up."  *Id.*, ¶13.  Ream replied, "[I]t will not be filed, matter of fact I will reject every grievance you file."  *Id.*  Peterson says that Pigg then struck him in the back with a closed fist, which made Ream

laugh. *Id.,* ¶14.  Peterson "was embarrassed, scared, in shock, angry, and frightened." *Id*., ¶¶ 16.

Peterson claims that he was later transferred out of and back into ARF, and that his Goliath books were missing from his footlocker when he returned.  ECF No. 1, PageID.2, ¶¶ 17-18.  Pigg said that he threw away the books because Peterson was "the bitch who sued his buddy."  *Id*., ¶21.  Peterson says that his April 2020 grievance about the books was rejected, causing him to feel defeated.  *Id*., ¶¶ 19-20.  Peterson also claims that he tried to send his headphones out for repair but Pigg and Ream intentionally charged him more money than he (Peterson) had in his account.  *Id*., ¶¶22-23.  Ream rejected Peterson's grievance about the headphones issue.  *Id*., PageID.3, 6.

Peterson accuses Ream of conspiring with Pigg to reject his grievances and says that he feels "intimidated" and "scared" to file a grievance against Pigg.  *Id*., PageID.3, ¶¶29, 31.

### III.   ANALYSIS

### A.

"The Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The Court's

function at the summary judgment stage "is not to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). The Court must view the factual evidence in the light most favorable to the non-moving party. *Scott v. Harris*, 550 U.S. 372, 380 (2007).

The Prison Litigation Reform Act (PLRA), requires prisoners to "properly" exhaust all "available" administrative remedies before filing a lawsuit challenging prison conditions. 42 U.S.C. § 1997e(a); *Woodford v. Ngo*, 548 U.S. 81, 88-90, 93 (2006). Proper exhaustion of administrative remedies "means using all steps that the agency holds out, and doing so *properly* (so that the agency addresses the issues on the merits)." *Woodford*, 548 U.S. at 90, 93 (emphasis in original). A prisoner's grievance must give "prison officials fair notice of the alleged mistreatment or misconduct that forms the basis of the constitutional or statutory claim made against a defendant in a prisoner's complaint." *Bell v. Konteh*, 450 F.3d 651, 654 (6th Cir. 2006) (citation and internal quotation marks omitted).

A dismissal for failure to exhaust administrative remedies, even when decided on summary judgment, is without prejudice. *Boyd v. Corr. Corp. of America*, 380 F.3d 989, 994 (6th Cir. 2004).

### B.

The Michigan Department of Corrections (MDOC) Policy Directive 03.02.130 has a three-step procedure that prisoners must follow to complete the administrative review process and properly exhaust grievances.[1] Defendants note that Peterson pursued grievances through the third step for medical issues in 2020, but none against Pigg or Ream. *See* ECF No. 19-3. Peterson concedes that he did not complete the three-step grievance process to address the confiscation of his books and other belongings, but he argues that he was excused from the exhaustion requirement because administrative remedies were unavailable to him. The Court disagrees.

### 1.

"[W]hen prison officials thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation,"

---

[1] The Policy Directive is available at:
https://www.michigan.gov/documents/corrections/03_02_130_200872_7.pdf (last viewed 7/15/2021).

the administration procedure is considered unavailable and "§ 1997e(a) poses no bar." *Ross v. Blake*, 578 U.S. 1174; 136 S. Ct. 1850, 1860 (2016). In *Ross,* the Court remanded the case for the trial court to determine whether there was "persuasive evidence that Maryland officials thwarted the effective invocation of the administrative process through threats, game-playing, or misrepresentations, either on a system-wide basis or in the individual case." *Id.* at 1862. This holding solidifies earlier decisions of the Sixth Circuit and other circuits.

For example, in *Himmelreich v. Federal Bureau of Prisons*, the court found that when a prison official's "actions and statements would deter a person of ordinary firmness from continuing with grievance process," they excuse the inmate from exhausting his administrative remedies. 766 F.3d 576, 578 (6th Cir. 2014). In that case, a reasonable jury could have found that a captain's actions and statements excused the plaintiff's failure to complete the grievance process. *Id*. The captain allegedly (1) threatened the plaintiff that she would transfer him to a penitentiary where he would be physically attacked if he continued with his grievance; (2) placed him in a special housing unit (SHU) after he filed a lawsuit; and (3) yelled at the plaintiff that he was in the SHU because he filed his tort claim. *Id*. at 577-78.

The *Himmelreich* court compared the facts before it to the "nonspecific allegations of fear" and "subjective feelings of futility" described in *Boyd v. Corr. Corp. of Am.*, 380 F.3d 989, 998 (6th Cir. 2004). The *Boyd* plaintiff claimed that he did not file grievances because he feared for his safety without specifying the basis for that fear. *Id.* The plaintiff's subjective belief "as to what the outcome might have been had he" filed a grievance "hardly excuses his failure to exhaust." *Id*. (internal citations and brackets omitted).

In *Ratliff v. De Baun*, the court held that a prison official shining a laser pointer at the inmate in the shower and repeatedly warning the inmate that he "needed to think about what [he's] doing" was not enough to deter the inmate from invoking the grievance process. 2017 WL 4365802, at *7 (W.D. Ky. Sept.29, 2017). In contrast, the court in *Bostrom v. Rowland*, concluded that the harms alleged in the plaintiff's sworn complaint "satisfy any reasonable definition of intimidation" and were specific enough to rise above allegations of a mere generalized fear of retaliation. 2016 WL 4257531, at *4 (W.D. Mich. July 20, 2016), *adopted*, 2016 WL 4248146 (W.D. Mich. Aug.11, 2016). The *Bostrom* plaintiff alleged that, because of his grievance activity, the defendants cited him for misconduct and

threatened him with more citations, placed him in administrative segregation, and restricted his mother's visits. *Id.*

Some circuit courts have found persuasive a two-prong test first set forth in *Turner v. Burnside*, 541 F.3d 1077 (11th Cir. 2008); *Rinaldi v. United States*, 904 F.3d 257, 268-69 (3d Cir. 2018); *McBride v. Lopez*, 807 F.3d 982, 987 (9th Cir. 2015). The first prong of the *Turner* test is subjective; the inmate "must provide a basis for the court to find that he actually believed prison officials would retaliate against him if he filed a grievance." *McBride,* 807 F.3d at 987. "If the prisoner makes this showing, he must then demonstrate that his belief was objectively reasonable." *Id*. For this objective prong, the inmate must show that the defendants' statements or actions could be viewed as threats of retaliations connected to the grievance procedures. *Id.*

> Although the threat need not explicitly reference the grievance system in order to deter a reasonable inmate from filing a grievance, there must be some basis in the record from which the district court could determine that a reasonable prisoner of ordinary firmness would have understood the prison official's actions to threaten retaliation if the prisoner chose to utilize the prison's grievance system. Only then will the threat render the prison grievance system effectively unavailable.

*Id.* at 988. The *McBride* court found that the plaintiff did not making the necessary showing despite the guards alleged use and threats of violence.

> Though the guards' statements may have seemed threatening, an inmate would not have reasonably understood that the guards intended to retaliate for filing a grievance. The only potentially relevant fact McBride alleges is that he was beaten, and that the guards (who beat him) made the statements. If this fact, standing alone, were sufficient, any hostile interaction between a prisoner and prison officials would render the prison's grievance system unavailable. There is no reason to allow inmates to avoid filing requirements on the basis of hostile interactions with guards when the interaction has no apparent relation to the use of the grievance system. Hostile interaction, even when it includes a threat of violence, does not necessarily render the grievance system 'unavailable.'

*Id*.

The Sixth Circuit has not addressed the *Turner* test in a published opinion, but courts within this circuit have found it persuasive and applied the two-prong test. *See Greene v. United States,* 2021 WL 1214499, at *16 (E.D. Ky. March 30, 2021); *Ratliff*, 2017 WL 4365802 at *7 (citing *McBride*, 897 F.3d at 988); *Pool v. Klenz*, No. 3:15 CV 1430, 2017 WL 1113359, at *4 (N.D. Ohio Mar. 24, 2017), *aff'd*, No. 17-3426, 2018 WL 1989637 (6th Cir. Jan. 17, 2018).

## 2.

Peterson does not show that his failure to exhaust his administrative remedies should be excused. First, although Peterson alleged that he was too scared to file a grievance against Pigg, he also claimed to have filed a grievance about his missing Goliath books in April 2020. ECF No. 1, PageID.2-3, ¶¶20, 29; s*ee Greene*, 2021 WL 1214499, at *17; *Pool,* 2018

WL 1989637, at *3. He also filed a grievance in July 2020 about being overcharged for sending his headphones out for repair. ECF No. 1, PageID.6.

Second, even if Peterson believed that Pigg and Reams would have retaliated against him if he had fully grieved them, he falls short of showing that the grievance system was unavailable to him. Instead, Peterson relies on hostile actions by Pigg and Ream that were not tied to the grievance system and on his unsubstantiated feelings of futility.

Peterson alleges that Pigg and Ream made intimidating statements, that Pigg hit him on the back, that Ream said that she would keep in mind that Peterson sued her and Pigg's "buddy," that Pigg threw out his books, and that Pigg and Ream overcharged him for sending out his headphones for repair. ECF No. 1, PageID.2-3. Peterson claims that Pigg and Reams did these things in retaliation for Peterson's lawsuit against their "buddy," and that Pigg said that he did not like prisoners who sue people. *Id*. at PageID.2. But Peterson does not allege that they threatened to retaliate against him if he used the grievance system. His allegations are "nonspecific allegations of fear" that fail the objective prong of the *Turner* test. *Boyd*, 380 F.3d at 998; *McBride,* 807 F.3d at 987-88.

Peterson also relies on subjective feelings of futility. *Boyd*, 380 F.3d at 998. He claims that Ream, a grievance coordinator, said that she would reject any of his grievances, and that a corrupt grievance coordinator can prevent proper exhaustion. ECF No. 1, PageID.2-3. But Peterson had a right to appeal any of Ream's decisions at Steps II and III, and Step III grievances are handled by the Grievance Section of the MDOC Office of Legal Affairs. MDOC Policy Directive 03.02.130, ¶O. Sixth Circuit precedent does not sanction Peterson's failure to try to exhaust his administrative remedies based on his subjective belief that Ream could thwart his efforts. *Napier v. Laurel Cty. Ky.*, 636 F.3d 218, 224 (6th Cir. 2011) ("Our Court has consistently analyzed whether an inmate's efforts to exhaust were sufficient under the circumstances, but in each case, the prisoner did *something*.") (emphasis in original); *Brock v. Kenton Cty.*, 93 F. App'x 793, 798 (6th Cir. 2004) (stating that, before a court finds that grievance procedures were unavailable, "the prisoner must make some affirmative efforts to comply with the administrative procedure").

The Court thus finds that Peterson has not shown that the administrative process was unavailable to him for the claims he advances and his failure to exhaust the available administrative remedies may not be excused on this basis.

## IV. CONCLUSION

Defendants' motion, ECF No. 19, should be **GRANTED** and Peterson's complaint should be **DISMISSED WITHOUT PREJUDICE**.

s/Elizabeth A. Stafford<br>
ELIZABETH A. STAFFORD<br>
United States Magistrate Judge

Dated: August 2, 2021

### NOTICE TO THE PARTIES ABOUT OBJECTIONS

Within 14 days of being served with this report and recommendation, any party may serve and file specific written objections to this Court's findings and recommendations. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2). If a party fails to timely file specific objections, any further appeal is waived. *Howard v. Secretary of HHS*, 932 F.2d 505 (6th Cir. 1991). And only the specific objections to this report and recommendation are preserved for appeal; all other objections are waived. *Willis v. Secretary of HHS*, 931 F.2d 390, 401 (6th Cir. 1991).

Each **objection must be labeled** as "Objection #1," "Objection #2," etc., and **must specify** precisely the provision of this report and recommendation to which it pertains. Within 14 days after service of objections, **any non-objecting party must file a response** to the objections, specifically addressing each issue raised in the objections in the same order and labeled as "Response to Objection #1," "Response to

Objection #2," etc.  The response must be **concise and proportionate in length and complexity to the objections**, but there is otherwise no page limitation.  If the Court determines that any objections are without merit, it may rule without awaiting the response.

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on August 2, 2021.

>  s/Marlena Williams
>  MARLENA WILLIAMS
>  Case Manager